UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 20-80291-Civ-Middlebrooks/Matthewman

DONALD WILLEMS,

      Movant,

v.

UNITED STATES OF AMERICA,

      Respondent.

_____/

### MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION REGARDING MOVANT'S MOTION TO VACATE, SET ASIDE OR CORRECT SENTENCE [DE 1]

THIS CAUSE is before the undersigned United States Magistrate Judge upon Movant Donald Willems' Motion to Vacate Sentence Under 28 U.S.C. § 2255 ("Motion") following a guilty plea and a sentence of 120 months' imprisonment in Case No. 17-80013-CR-MIDDLEBROOKS in the U.S. District Court for the Southern District of Florida. [DE 1].[1]  The Government responded in opposition [DE 8], and Movant replied [DE 11]. This matter has been referred for report and recommendation to the Undersigned pursuant to 28 U.S.C. § 636 and the Magistrate Judge Rules of the Local Rules of the Southern District of Florida [DE 2; DE 4; DE 23]. The Undersigned held an evidentiary hearing via Zoom Video Teleconference on Ground One in the Motion, that is, whether Willems' counsel was ineffective for failing to file a requested direct

---

[1] This Report uses the citation "[DE]" to reference docket entry numbers in the instant federal habeas case. Citations to "[CR-DE]" refer to docket entries in the underlying criminal case.

1

appeal.[2]  This matter is now ripe for review.

## I.      **BACKGROUND**

### A. **Claims**

In his Motion under 28 USC § 2255, Willems made ten claims for relief and requested an evidentiary hearing. [DE 1]. Construing the arguments liberally, as afforded to *pro se* litigants pursuant to *Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), Willems has essentially raised:

a)  Whether his sentencing counsel, Bijan S. Parwaresch, was ineffective for failing to file a notice of direct appeal when Willems requested it (Ground One);

b)  Whether his pre-plea counsel, Mauricio Padilla, Jr., was ineffective for failing to review discovery material with Willems (Ground Two), for failing to interview two witnesses (Ground Four), and for failing to correct a conflict of interest while representing him (Ground Seven);

c)  Whether his sentencing counsel, Bijan S. Parwaresch, was ineffective for failing to move to correct his guidelines enhancement (Ground Five) and for failing to correct factual errors in the guidelines (Grounds Six and Eight);

d)  Whether Willems' constitutional rights were violated by the Court's abuse of its discretion in sentencing him to the statutory maximum (Ground Three) and denying his motion to continue his sentencing hearing (Ground Nine); and

e)  Whether Willems is actually innocent (Ground Ten).

---

[2] The Undersigned adopts the Government's grouping of Willems' multiple grounds of ineffective assistance. [DE 8 at 11-12].  Despite this grouping for ease of reference, the Court has individually considered each of Willems' claims in his Motion.

### B. Procedural History

On December 20, 2016, Willems was charged via criminal complaint with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349. [CR-DE 1]. Willems was arrested on December 21, 2016 and appeared on this charge on that same date [CR-DE 19], at which time he was released on a $100,000 corporate surety bond with conditions. [CR-DE 19, DE 29]. After a hearing regarding the status of his representation by counsel [CR-DE 36], on January 5, 2017, attorney Mauricio Padilla, Jr. filed a notice of permanent appearance on Willems' behalf [CR-DE 48], covering trial and all proceedings in the District Court. *Id.*

On January 24, 2017, a federal grand jury returned an indictment charging Willems with conspiracy to commit health care fraud, in violation of 18 U.S.C. § 1349 (Count One); conspiracy to commit money laundering, in violation of 18 U.S.C. § 1956(h) (Count Four); and substantive money laundering, in violation of 18 U.S.C. § 1956(a)(1) (Count Seven). [CR-DE 66].

On January 25, 2017, Willems was arraigned and entered a plea of not guilty to all charges. [CR-DE 69]. On March 9, 2017, the Government filed an *ex parte*, sealed motion to revoke Willems' bond. [CR-DE 120]. He was arrested on March 10, 2017 and appeared for the revocation proceedings on that date. [CR-DE 125]. On March 15, 2017, after the parties notified the Court, the Court scheduled a change of plea hearing for March 23, 2017. [CR-DE 130]. On that same date, Willems stipulated to the revocation of his bond and an order of pretrial detention. [CR-DE 131, 132].

On March 23, 2017, pursuant to a written plea agreement [CR-DE 148] and factual proffer [CR-DE 149], Willems entered a guilty plea to Count One of the Indictment. [CR-DE 147]. His sentencing was initially set for June 7, 2017 [CR-DE 150], but after the Court granted Willems'

request to be moved to the Federal Detention Center in Miami [CR-DE 156, 157], the Court rescheduled the sentencing hearing for June 13, 2017 in Miami. [CR-DE 159].

In April and May, the Government filed redacted victim impact letters. [CR-DE 176, 208, 212]. On June 2, 2017, the final Presentence Investigation Report ("PSI") was issued. [CR-DE 229]. On June 8, 2017, attorney Bijan S. Parwaresch filed a notice of permanent appearance on Willems' behalf. [CR-DE 233]. On June 9, 2017, Mr. Parwaresch filed an unopposed motion to continue the sentencing for sixty days [CR-DE 234], which the Court denied. [CR-DE 235]. On June 13, 2017, the Court permitted the substitution of counsel, dismissing Mr. Padilla and accepting Mr. Parwaresch's appearance on behalf of Willems. [CR-DE 241]. Willems was sentenced that day to a total term of imprisonment of 120 months, followed by a term of supervised release of three years. [CR-DE 238]. Judgment was entered on June 14, 2017. [CR-DE 242].

On July 17, 2017, the parties filed a stipulation regarding restitution [CR-DE 275] and a joint motion to amend the judgment and cancel the restitution hearing [CR-DE 276]. That same date, the Court accepted the stipulation, granted the motion [CR-DE 277], and entered an amended judgment [CR-DE 280], ordering Willems jointly and severally liable for restitution in the amount of $3,041,476.32. *Id.* at 6.

On June 7, 2018, Willems mailed what he styled a "pre-litigation document," which was filed on June 11, 2018 and entered on June 12, 2018. [CR-DE 331]. In the pre-litigation document, he presented three issues: "Does the law permit a [p]ro se litigant the right to correct a bad choice," whether his "waiver [was] unconstitutional," and "[w]hen a '[g]ood faith contract' is breached, is said contract considered null and void." *Id.* at 2.

On June 8, 2018, Willems mailed to the Clerk a Notice of Appeal, appealing from the order of judgment, which was filed on June 11, 2018 and entered on June 12, 2018 [CR-DE 330]. On

4

June 12, 2018, Mr. Parwaresch moved to withdraw from Willems' criminal case [CR-DE 332], which was granted on July 26, 2018 [CR-DE 339]. On July 10, 2018, Willems filed for leave to appeal *in forma pauperis* [CR-DE 338], but on July 26, 2018, pursuant to the Criminal Justice Act ("CJA"), the Court appointed Arthur Wallace to represent Willems for purposes of appeal [CR-DE 339]. Accordingly, on August 1, 2018, the Court denied the motion for leave to appeal *in forma pauperis* as moot. [CR-DE 341].

The sole issue raised in his direct appeal was whether the district court abused its discretion by sentencing Willems to 120 months, an upward variance from the guidelines range of 87 to 108 months. *United States v. Willems*, No. 18-12470, Initial Br. of Appellant at 7 (Nov. 19, 2018). On January 25, 2019, the Eleventh Circuit dismissed Willems' appeal as untimely. [CR-DE 344]. On October 7, 2019, the U.S. Supreme Court denied Willems' petition for a writ of certiorari. [CR-DE 366].

Willems signed the instant Motion on February 19, 2020, and it was filed and entered by the Clerk of Court on February 25, 2020. [DE 1 at 13-15]. After reviewing the Motion, the Court appointed counsel and set an evidentiary hearing on Ground One of the Motion, which is the issue of whether Willems' counsel ineffectively represented him by failing to timely file a requested direct appeal. [DE 12 & 26]. The details of the evidentiary hearing are described *infra*.

## C. The Offense Conduct[3]

Willems was a licensed osteopathic doctor in the State of Florida and was employed by Deerfield Medical Center. Through Deerfield Medical Center, Willems was hired to serve as medical director of Reflections Treatment Center from October 2015 to May 2016. As medical

---

[3] Willems' offense conduct is reflected in the stipulated Factual Proffer executed by the parties on March 13, 2017. [CR-DE 149]. In addition, Willems' offense conduct, along with the offense conduct of his co-conspirators, is reflected in paragraphs 8 through 109 of the PSI. [CR-DE 229].

director, Willems was purportedly responsible for evaluating patients, developing appropriate plans of treatment, and prescribing medically necessary treatment and testing. Instead of Willems using his medical expertise and his individual assessments of patients to decide what type of laboratory testing was needed by each patient, co-defendant Kenneth Chatman dictated the type and frequency of different types of lab testing that would be performed based upon the kickbacks and bribes that he was receiving from different clinical laboratories. Chatman dictated that confirmatory urine drug testing on dozens of panels for street and prescription drugs would be performed three days per week, duplicative saliva drug testing would occur, and every patient would receive DNA and allergy testing regardless of whether patients complained of allergies. Based upon Chatman's instructions, "standing orders" were prepared and provided by clinical labs. Rather than selecting individual drug tests based upon a patient's drug use history, period of sobriety, or any other individualized evaluation, Willems signed these "standing orders" that authorized testing patients before the patients had even seen the doctor, including conducting pain medications. Thus, Willems did not have the proper certifications from the Drug Enforcement Administration of the Department of Health and Human Services to prescribe those medications. Despite his lack of certifications, Willems prescribed controlled substances, including opioids, to patients at Reflections using DEA numbers assigned to other physicians and prescriptions that contained the forged signature of another physician.

### D. Plea Agreement and Change of Plea Hearing

On March 23, 2017, Willems appeared before the Honorable Donald M. Middlebrooks for a change of plea hearing. [CR-DE 147]. Willems was placed under oath. [DE 8-1, Tr. of Change of Plea Hr'g, at 2]. After being placed under oath, Willems confirmed that he had reviewed the charges filed against him, and that he had discussed them with his counsel. *Id.* at 4. He also stated

that he was satisfied with the representation Mr. Padilla had provided to him. *Id.* He confirmed that it was his signature on the written plea agreement, and that before signing it, he had reviewed it and discussed with his lawyer. *Id.* He also confirmed that he had understood the plea agreement. *Id.* Willems confirmed his agreement to plead guilty to Count One, which charged conspiracy to commit health care fraud, and that in exchange, the Government would dismiss the remaining counts and the forfeiture provision at sentencing. *Id.* at 4-5. In reviewing the plea agreement, the Court specifically reviewed the maximum penalties, including the mandatory entry of restitution against Willems. *Id.* at 5. The Court also reviewed the appellate waiver [CR-DE 148 ¶ 16], in which Willems agreed to give up his right to appeal unless (1) his sentence exceeded the maximum permitted by statute, (2) his sentence was the result of an upward departure and/or upward variance from the advisory guideline range, or (3) the Government appealed his sentence. [DE 8-1 at 8].

After the Court reviewed the plea agreement with Willems, Willems acknowledged that beyond the written plea agreement, the Government had not made any promises to him to induce his guilty plea, no one had attempted to force him to plead guilty, and he was pleading guilty of his own free will. *Id.* at 4-9. The Court also reviewed the Government's right to use any false statements against Willems. *Id.* at 3. The Court further reviewed Willems' right to plead not guilty; to have a jury trial; to be represented by counsel at trial; to confront and cross-examine witnesses; to present evidence, including his own witnesses; and to testify or otherwise to be protected from compelled self-incrimination. *Id.* at 9. Willems confirmed his signature on the written factual proffer, and acknowledged that before signing it, he reviewed it with his lawyer and agreed with the facts therein. *Id.* at 10. After the Government orally summarized the written factual proffer [*Id.* at 10-14], the Court asked Willems, "Mr. Willems, you heard the prosecutor describe what she

would have proffered at trial. Did you do those things?" *Id.* at 14. Willems responded, "Yes, Your Honor," and entered his guilty plea. *Id.*

### E. Presentence Investigation Report

Pursuant to U.S.S.G. §§ 2X1.1(a) and 2B1.1, the PSI calculated a base offense level of 6. [PSI ¶ 169]. Because the offense conduct involved actual loss in excess of $6.5 million, under U.S.S.G. § 2B1.1(b)(1)(J), an eighteen-level enhancement was applied. *Id.* ¶ 170. Willems received a two-level enhancement because the offense involved more than ten victims, [*Id.* ¶ 171], a two-level enhancement for risk of death or serious bodily injury, [*Id.* ¶ 172], and a two-level enhancement because the offense involved vulnerable victims [*Id.* ¶ 173]. Willems also received a two-level enhancement for abuse of position of trust or use of a special skill. *Id.* ¶ 174. The PSI did not apply any reduction for acceptance of responsibility, due to Willems' violations of his pretrial bond. *Id.* ¶ 168. For these reasons, a two-level enhancement for obstruction of justice was also applied under U.S.S.G. § 3C1.1. *Id.* ¶ 175. The total offense level calculated in the PSI was 34. *Id.* ¶ 179. Willems had zero criminal history points and was placed in criminal history category I. *Id.* ¶ 182. Accordingly, his resulting guidelines range was 151 to 188 months, but given the statutory maximum of ten years, the guidelines range was 120 months under U.S.S.G. § 5G1.1(a). *Id.* ¶ 218.

### F. Substitution of Counsel and Sentencing Hearing

On June 8, 2017, Mr. Parwaresch appeared on Willems' behalf. [CR-DE 233]. In his Unopposed Motion to Continue the Sentencing for 60 Days [CR-DE 234], Mr. Parwaresch stated that Willems "is standing by his guilty plea but would like additional time to review the discovery in this case so he can prepare better for the sentencing." *Id.* at 1. Mr. Parwaresch stated that

"[a]ccording to [Willems], he has not been shown any discovery in this case." *Id.* The Court denied the motion. [CR-DE 235].

Prior to pleading guilty, Willems had decided to cooperate with the Government [CR-DE 148 ¶¶ 8-10; DE 8-1 at 6-7; DE 8-4 ¶ 5], and after reviewing everything with Mr. Parwaresch prior to the sentencing, Willems elected to maintain his guilty plea, proceed to sentencing, and recommend a sentence of 120 months to the Court. [DE 8-5 ¶¶ 4-5]. The agreement to recommend a 120-month sentence was reached by the parties due to Willems' Title 21 offenses, as described in the factual proffer and as continued criminal activity when he was on bond.[4] [PSI ¶ 10]. Prior to the sentencing, the Government emailed Mr. Parwaresch its computation of the guidelines for the controlled substance offenses, advising him that under its calculations, these crimes would qualify as an offense level 36. Because he would also receive a two-level enhancement for special skill, even with a full three-level reduction for acceptance of responsibility, his guidelines range for these crimes would be 168 to 210 months, for which the Government would seek a consecutive sentence.

The Court sentenced Willems on June 13, 2017. [DE 238]. The parties advised the Court that they had agreed to jointly recommend a sentence of ten years' imprisonment, an upward variance from the guidelines, in exchange for the Government not seeking additional charges. [DE 8-2, Tr. of Sentencing Hr'g, at 2].

---

[4] Willems stipulated to detention and his bond was revoked for having violated three conditions of his bond: 1) he knowingly had contact with witnesses in his criminal case who he continued to work with at Deerfield Medical Center; 2) he continued to provide services to patients who were residing at sober homes or receiving treatment at substance abuse treatment centers as evidenced by his own patient treatment notes and by interviews of patients; and 3) he prescribed controlled substances to patients and to himself using the DEA and/or DEAX numbers of other physicians without their knowledge. [CR-DE 132].

9

The Court ultimately determined that the total offense level was 29, after granting the full three-level reduction for acceptance of responsibility under U.S.S.G. § 3E1.1(b) and declining to apply a two-level enhancement for obstruction of justice. [*Id.* at 8]. The Court also determined that Willems was a criminal history category I, for a total guidelines range of 87 to 108 months. *Id.* The Court accepted the parties' joint recommendation of an upward variance to 120 months, the statutory maximum. *Id.* at 9. The Court also noted that this would be a guidelines sentence, had the Court not granted Willems a reduction for acceptance of responsibility and applied the obstruction enhancement. *Id.*

Willems allocuted, saying, "I'm very remorseful for everything I was involved in." *Id.* at 8. After pronouncing the sentence of 120 months' imprisonment, followed by a term of supervised release of three years, and a $100 special assessment, with restitution to be determined at a later date [*Id.* at 9-10], the Court noted that although the plea agreement contained an appellate waiver, because the Court had varied upward, it did not appear that the appellate waiver would apply. *Id.* at 10. The Court therefore advised Willems that he had a right to appeal, and that any notice of appeal had to be filed within fourteen days. *Id.* at 10. The Court also advised that failure to file a notice within fourteen days would constitute a waiver of Willems' right to appeal. *Id.* at 10-11.

Judgment was entered on June 14, 2017. [CR-DE 242]. An amended judgment was entered on July 17, 2017 [CR-DE 280], amending Willems' sentence to include restitution in the amount of $3,041,476.32. As detailed *supra*, on June 8, 2018, Willems mailed a Notice of Appeal to the Clerk appealing from the order of judgment, which was filed on June 11, 2018 and entered on June 12, 2018 [CR-DE 330].

### G. Evidentiary Hearing

On August 11, 2021, the Undersigned held an evidentiary hearing on Ground One of the Motion, which is the issue of whether Willems' counsel ineffectively represented him by failing to timely file a requested direct appeal. [DE 12; 26; 34]. The Court took judicial notice of the underlying criminal case, and Willems' exhibits 1-10 and the Government's exhibits A-D were admitted in evidence without objection. [DE 16; DE 33]. Willems testified on his own behalf and the Government called Mr. Parwaresch to testify. [DE 34]. The relevant testimony of the witnesses and the relevant portions of the admitted exhibits are summarized below. [5]

Willems testified at the evidentiary hearing as follows. Ten to fifteen minutes after sentencing, Mr. Parwaresch visited Willems in the Marshals' holding cell for fifteen to twenty minutes. Mr. Parwaresch told Willems that Willems had a right to appeal because the Court had varied upward in his sentence. Willems then told Mr. Parwaresch to file a notice of appeal.  Mr. Parwaresch told Willems to refer back to his contract that states that Mr. Parwaresch was only his attorney for cooperation with the Government and for sentencing and that he was not his attorney for the purposes of appeal.  Willems instructed Mr. Parwaresch to file a notice of appeal. At the conclusion of the conversation, Willems believed that Mr. Parwaresch would not be filing the notice of appeal.  Willems ultimately filed a notice of appeal over a year after his sentencing. According to Willems, he lied during his change of plea hearing and the facts within the proffer were not true. Specifically, when asked, "are you saying that you lied to Judge Middlebrooks at your change of plea hearing?" Willems answered "Yes."  When asked, "are you admitting before the Court today that you liked while under oath?" Willems responded, "[a]t that time, yes."

---

[5] The testimony has not been formally transcribed and made part of the record. The narrative contained herein is a summary of testimony as recalled by the Undersigned.

Mr. Parwaresch testified as follows. He has been a member of the Florida Bar since 1997 and has been practicing criminal law for approximately twenty-five years.  Mr. Parwaresch was retained to represent Willems in June of 2017, Willems and Mr. Parwaresch executed a retainer agreement, and Mr. Parwaresch filed a notice of appearance in Willems' criminal case. [Ex.1; Ex. A; Ex. B]. Mr. Parwaresch was retained for sentencing and cooperation and not for the purposes of appeal. By the time Mr. Parwaresch was retained, Willems had already plead guilty. Mr. Parwaresch reviewed the discovery in the case and discussed different options with Willems on how to proceed for sentencing. Ultimately, Willems and Mr. Parwaresch agreed to stick with the agreement reached with the Government with a slight modification which allowed Mr. Parwaresch to highlight certain factors for the Court's determination as to whether the 10-year agreed-upon sentence would be adequate.  The agreement was that the Government would agree to a joint recommendation for a 10-year sentence in exchange for avoiding a separate set of charges. At sentencing, Willems received ten years in prison and the Court notified Willems of his right to appeal.

After sentencing, Mr. Parwaresch met with Willems to discuss his appellate rights. He also met with Willems the following day and had a lengthier and more significant conversation regarding Willems' appellate rights.  He advised Willems that he had a right to appeal but discussed that it would be contrary to his cooperation efforts with the Government if he appealed, which is why Willems advised that he did not want to file an appeal. Willems never asked Mr. Parwaresch to file a notice of appeal. Willems also never indirectly suggested that he wanted to appeal and Willems was very clear that he wanted to cooperate with the Government rather than appeal.  Hypothetically, if Willems had asked Mr. Parwaresch to file a notice of appeal, Mr. Parwaresch would have explained to him the detriments of that decision as it relates to cooperation

12

with the Government and Mr. Parwaresch would have filed the notice of appeal immediately. There is nothing about Mr. Parwaresch's retainer agreement that would have prevented him from filing a notice of appeal if requested to do so by Willems. Mr. Parwaresch did not memorialize these two conversations with Willems regarding an appeal in writing.

After these two meetings with Willems, Mr. Parwaresch continued to meet with Willems throughout the summer of 2017 because they were working on cooperating with the Government. [Ex. D]. Upon learning that Willems had filed a *pro se* notice of appeal, Mr. Parwaresch moved to withdraw as his counsel.  Ultimately, Willems did not receive a reduction in his sentence based upon his cooperation with the Government.

## II.      STANDARD OF REVIEW

Because collateral review is not a substitute for direct appeal, the grounds for collateral attack on final judgments pursuant to § 2255 are extremely limited. A prisoner is entitled to relief under § 2255 if the Court imposed a sentence that (1) violated the Constitution or laws of the United States, (2) exceeded its jurisdiction, (3) exceeded the maximum authorized by law, or (4) is otherwise subject to collateral attack. 28 U.S.C. § 2255(a); *McKay v. United States*, 657 F.3d 1190, 1194 n.8 (11th Cir. 2011). Thus, relief under 28 U.S.C. § 2255 "is reserved for transgressions of constitutional rights and for that narrow compass of other injury that could not have been raised in direct appeal and would, if condoned, result in a complete miscarriage of justice." *Lynn v. United States*, 365 F.3d 1225, 1232 (11th Cir. 2004) (citations omitted). If the Court finds a claim under § 2255 to be valid, the Court shall vacate and set the judgment aside and shall discharge the prisoner, grant a new trial or correct the sentence. 28 U.S.C. § 2255. The burden of proof is on the movant, not the Government, to establish that vacatur of the conviction or sentence is required. *Beeman v. United States*, 871 F.3d 1215, 1221-1222 (11th Cir. 2017).

13

### III.   **DISCUSSION**

**A. Timeliness**

As a threshold issue, the Government asserts that the Motion is untimely.[6] There is a mandatory one-year "period of limitation" for § 2255 motions, which runs from the latest of the following events:

> (1) the date on which the judgment of conviction becomes final;
>
> (2) the date on which the impediment to making a motion created by governmental action in violation of the Constitution or laws of the United States is removed, if the movant was prevented from making a motion by such governmental action;
>
> (3) the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> (4) the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence.

28 U.S.C. § 2255(1)-(4).

The Court agrees with the Government's position that the Motion is untimely, as it was filed more than one year after his judgment of conviction became final. *Sanchez-Blandon v. United States*, 8:13-CR-557-T-30AEP, 2017 WL 951630, at *1 (M.D. Fla. Mar. 10, 2017) (finding

---

[6] In addition to arguing that the Motion is untimely, the Government also asserts that Willems' claims are procedurally barred. The Undersigned agrees that many of the arguments raised by Willems are procedurally barred for failing to raise them below and on direct appeal. As detailed in this section, the Undersigned also finds that the Motion is untimely.  However, because the Undersigned addresses the merits of each argument raised by Willems in the instant Motion in order to develop a full record, the Undersigned finds it is most efficient to merely note the procedural bar before turning to the merits in detail. *Clisby v. Jones*, 960 F.2d 925, 936 (11th Cir.1992) (en banc); *Gay v. United States*, 816 F.2d 614, 616 n. 1 (11th Cir.1987).

14

petitioner's section 2255 motion untimely when he failed to file it more than a year after his limitations period expired). As set forth *supra,* habeas motions under section 2255 are subject to a one-year statute of limitations that runs from the latest of four specified dates. 28 U.S.C. § 2255(f). In the present case, the only relevant date is "the date on which the judgment of conviction becomes final." 28 U.S.C. § 2255(f)(1). The Supreme Court explained that "[b]y 'final', we mean a case in which a judgment of conviction has been rendered, the availability of appeal exhausted, and the time for a petition for certiorari elapsed or a petition for certiorari finally denied." *Griffith v. Kentucky*, 479 U.S. 314, 321 n.6 (1987); *see also Clay v. United States*, 537 U.S. 522 (2003); *Kaufman v. United States*, 282 F.3d 1336 (11th Cir. 2002). When Willems' amended judgment was entered on July 17, 2017, he had fourteen days after the entry of judgment in which to file a notice of appeal. He did not do so until June 8, 2018, rendering his appeal untimely. Thereafter, Willems filed the instant habeas Motion on February 19, 2020, rendering his Motion untimely.

Willems argues that his Motion is timely because "[t]he denial of my Direct Appeal was rendered March 26th, 2019" and the Supreme Court did not deny his petition for writ of certiorari until October 7, 2019. However, an untimely notice of appeal does not toll the one-year status of limitations. *Ferguson v. United States*, 19-22901-CV, 2019 WL 8503689, at *4 (S.D. Fla. Dec. 16, 2019), *report and recommendation adopted in part, rejected in part on other grounds*, 1:17-CR-20877-UU, 2020 WL 1917947 (S.D. Fla. Feb. 3, 2020) (finding the petitioner's section 2255 motion to be untimely because the petitioner cannot extend the period within which to seek certiorari review from an untimely filed notice of appeal); *see also United States v. Plascencia*, 537 F.3d 385, 387-90 (5th Cir. 2008) (finding that judgment became final when the deadline to file a timely notice of appeal expired rather than 90 days after the Court of Appeals dismissed the untimely notice of appeal). This time bar applies even though Willems' claims include a claim of

15

counsel's failure to file a requested notice of appeal. *See United States v. Terrones-Lopez*, 47 F. App'x 882, 882-83 (10th Cir. 2011).

No other provision of 28 U.S.C. § 2255(f) applies. In particular, even if Willems were to try to rely on 28 U.S.C. § 2255(f)(4) as the basis for the statute of limitations, his motion is still untimely. Under § 2255(f)(4), the limitation period "begins to run when the facts could have been discovered through the exercise of due diligence, not when they were actually discovered." *Aron v. United States*, 291 F.3d 708, 711 (11th Cir. 2002). Willems admits that he knew Mr. Parwaresch would not be filing a notice of appeal on Willems' behalf after their discussion that occurred after sentencing.  Moreover, according to Willems, the evidence that would have shown that he is actually innocent was known by Willems and disclosed to his attorney prior to his change of plea.

In addition, Willems cannot establish that he would be entitled to equitable tolling. "Equitable tolling is appropriate when a movant untimely files because of extraordinary circumstances that are both beyond his control and unavoidable even with diligence." *Sandvik v. United States*, 177 F.3d 1269, 1271 (11th Cir. 1999) (per curiam); *see also Holland v. Florida*, 560 U.S. 631 (2010). Equitable tolling is an "extraordinary remedy" limited to "rare and exceptional circumstances" and "typically applied sparingly." *Hunter v. Ferrell*, 587 F.3d 1304, 1308 (11th Cir. 2009) (per curiam). "The petitioner bears the burden of showing that equitable tolling is warranted." *Id.* Willems is not entitled to equitable tolling. First, he has not provided any argument that his motion is entitled to equitable tolling. To the contrary, he claims his Motion is timely. Second, Willems cannot show due diligence. Williams offers no explanation as to why he waited almost a year to file a notice of appeal when his own argument is that he wanted to appeal as of the date his sentencing on June 13, 2017. In fact, Willems' position is that he was advised of his right to appeal, he left the conversation with his attorney knowing that a notice of appeal would

not be filed, and his *pro se* notice of appeal was not filed until June 8, 2018. *See, e.g.*, *Sanchez-Blandon v. United States*, Case No: 8:17–cv–513–T–30AEP, 2017 WL 951630, at *1 (M.D. Fla. Mar. 10, 2017) ("The only explanation Petitioner offers as to why his Motion was not filed sooner is that he 'was waiting for information about my appeal but did not discover that my attorney had not filed for appeal until now.' This argument is insufficient to toll the time for filing his Motion.") (internal citation omitted); *Ramiro v. United States*, No. 1:16-cv-3389-WSD, 2017 WL 1532260, at *2 (N.D. Ga. Apr. 28, 2017). ("The Magistrate Judge found that equitable tolling was not warranted because Movant failed to show his attorney abandoned him or that he exercised due diligence in monitoring the status of his direct appeal. The Court finds no plain error in this conclusion.") (internal citation omitted).

Finally, Willems asserts that he is actually innocent, although this is not specifically argued with respect to timeliness. A claim of actual innocence will permit collateral review that is otherwise procedurally barred. *See Bousley v. United States*, 523 U.S. 614, 623 (1998). However, as fully addressed *infra*, Willems is not entitled to habeas relief based on his assertion of actual innocence nor does he "assert a colorable claim of actual innocence" sufficient to overcome the procedural bar caused by this untimely filing. *Philentrope v. United States*, No. 8:11-CV-2177-T-27TGW, 2011 WL 4913569, at *2 (M.D. Fla. Oct. 14, 2011).

Accordingly, the Undersigned finds that Willems' Motion is clearly untimely, and should be dismissed on that basis alone. However, to develop a full record for the benefit of any subsequent review, the Undersigned will nonetheless address all of the claims asserted by Willems in his untimely Motion. *See Clisby*, 960 F.2d at 936; *Gay*, 816 F.2d at 616 n. 1.

**B. Ineffective Assistance of Counsel**

Willems raises several claims that his counsel was ineffective for several reasons: failure to file notice of appeal (Ground One); failure to review discovery and investigate (Grounds Two, Four); conflict of interest (Ground Seven); sentencing claims (Grounds Five, Six, Eight). Each of these claims will be addressed *infra.*

To prevail on a claim of ineffective assistance of counsel, the movant must demonstrate both (1) that counsel's performance was deficient, and (2) a reasonable probability that the deficient performance prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 694 (1984). If the movant cannot meet one of *Strickland's* prongs, the Court does not need to address the other prong. *Id.* at 697.

To show counsel's performance was deficient, a movant must establish that "no competent counsel would have taken the action that his counsel did take." *Gordon v. United States*, 518 F.3d 1291, 1301 (11th Cir. 2008) (quoting *Chandler v. United States*, 218 F.3d 1305, 1315 (11th Cir. 2000)). To establish prejudice, a movant must establish that, but for counsel's deficient performance, the outcome of the proceeding would have been different. *Strickland*, 466 U.S. at 694. For the Court to focus merely on "outcome determination," however, is insufficient; "[t]o set aside a conviction or sentence solely because the outcome would have been different but for counsel's error may grant the defendant a windfall to which the law does not entitle him." *Lockhart v. Fretwell*, 506 U.S. 364, 369-70 (1993). A movant, therefore, must establish "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 369 (quoting *Strickland*, 466 U.S. at 687).

It is beyond dispute that habeas movants bear the burden of proof in habeas proceedings. *Blankenship v. Hall*, 542 F.3d 1253, 1270 (11th Cir. 2008); *Hill v. Linaham*, 697 F.2d 1032, 1036

(11th Cir. 1983). *See also* 28 U.S.C. § 2255(b), (e); Rule 2 and 4 of the Rules Governing Section 2255 Cases. This axiom is so well-settled that *Strickland* itself placed the burden of proof on habeas litigants, who, like Willems, seek to invoke the Sixth Amendment doctrine. *See generally Strickland*, 466 U.S. at 695-96; *Shiver v. United States*, 619 F. App'x 864, 865 (11th Cir. 2015). Thus, by requiring habeas litigants to bear the burden of showing constitutional error, criminal proceedings are treated as "valid until proven otherwise." *Occhicone v. Crosby*, 455 F.3d 1306, 1310 (11th Cir. 2006).

i.      *Failure To File Notice Of Appeal (Ground One)*

Willems asserts that Mr. Parwaresch was ineffective for not filing a notice of appeal when Willems requested that Mr. Parwaresch do so. According to Willems, his "Sentencing Attorney did not file a direct appeal when [Willems] requested it, during our meeting after the sentencing hearing." [DE 1 at 4]. Willems states that during his sentencing hearing, the Court advised Willems that he had a right to appeal and that any notice of appeal must be filed within fourteen days. [DE 11 at 3]. "With this advisement still ringing in [Willems'] ears, and only a few minutes after [his] sentencing hearing, [Willems] had a meeting with [his] sentencing lawyer[,]" Mr. Parwaresch. *Id.* During that meeting, Mr. Parwaresch advised that because of the upward variance, his "plea waiver was invalid and [he] could file a direct appeal." *Id.* At that time, Willems told Mr. Parwaresch that he would like him to file a direct appeal so that he "could correct some of the PSR and Guideline errors, in addition to getting to look at the discovery and interviewing witnesses[.]" *Id.* Then, Mr. Parwaresch informed Willems that Mr. Parwaresch would not file a notice of appeal because he was not hired to do his appeal. *Id.* Thereafter, Mr. Parwaresch discussed ways in which Willems could cooperate with the Government in order to decrease his prison time. *Id.* When Willems filed a *pro se* notice of appeal, Mr. Parwaresch immediately sought to withdraw from representing

19

Willems. *Id.* at 3-4.  During the hearing on the motion to withdraw, Mr. Parwaresch advised that he was "not hired to do an appeal." *Id.* The Undersigned finds that Willems has not demonstrated that he is entitled to relief under *Strickland*.

The law is clear that counsel's failure to file a direct appeal after being requested to do so by his client results in a *per se* constitutional violation of the movant's Sixth Amendment right to counsel, which entitles a defendant to an appellate proceeding. *Roe v. Flores-Ortega*, 528 U.S. 470, 477 (2000) ("We have long held that a lawyer who disregards specific instructions from the defendant to file a notice of appeal acts in a manner that is professionally unreasonable.").

There is a presumption of prejudice "with no further showing from the defendant of the merits of his underlying claims when the violation of the right to counsel rendered the proceeding presumptively unreliable or entirely nonexistent." *Id.* at 484. A movant need not establish that his direct appeal would have been arguably meritorious; he need only show that his counsel's constitutionally deficient performance deprived him of an appeal he would have otherwise taken-*i.e.*, the defendant expressed to his attorney a desire to appeal. *Id.*

Even when a defendant has not specifically instructed his counsel to file an appeal, in order to determine whether counsel performed deficiently, the Court must inquire into whether counsel in fact consulted with the defendant about an appeal. *Id.* at 478. "If so, the attorney has only acted unreasonably if he has ignored the client's wishes to appeal the case.  If not, the court must further inquire whether the attorney had an affirmative duty to consult." *Gomez-Diaz v. United States*, 433 F.3d 788, 791-92 (11th Cir. 2005) (citing *Roe*, 528 U.S. at 478). The duty to consult arises when either: (1) any rational defendant would want to appeal; or (2) the defendant reasonably demonstrated an interest in appealing. *Id.* (citing *Roe*, 528 U.S. at 480). "[T]o show prejudice in these circumstances, a defendant must demonstrate that there is a reasonable probability that, but

for counsel's deficient failure to consult with him about an appeal, he would have timely appealed." *Roe*, 528 U.S. at 484.

In this case, Willems' theory is that Mr. Parwaresch did not file a notice of appeal as instructed because he was not paid to handle the appeal. The Undersigned finds that Willems' testimony during the evidentiary hearing is not credible. First, the Undersigned finds that Willems perjured himself during the evidentiary hearing. Willems testified before the undersigned Magistrate Judge that he lied to the District Judge at his change of plea hearing when he admitted he was guilty because, according to Willems now, he was actually innocent. After carefully considering the credibility and observing the demeanor of Willems during evidentiary hearing, the Undersigned finds that Willems clearly lied at the evidentiary hearing before the Undersigned. Willems also has the motivation to lie because he has not yet received a reduction in his sentence for his cooperation with the Government and wants to go back to the negotiating table, "to correct a bad choice[.]" *See* CR-DE 331.

Second, it is inconsistent for Willems to testify that he wanted to appeal because he is both innocent of the crimes to which he plead guilty, and because he wants to "correct some of the PSR and Guideline errors" relating to sentencing. This is particularly true in light of the fact that the sole issue raised in his appeal was whether the District Court abused its discretion by applying an upward variance from the guidelines range when sentencing Willems. Third, it is uncontested that Willems was advised of his right to appeal by the Court and by Mr. Parwaresch, and that when the discussion regarding his right to appeal with Mr. Parwaresch had concluded, Willems understood that a notice of appeal would not be filed. If Willems wanted to appeal because he was either innocent or because of certain perceived errors in sentencing, and if he truly thought that Mr. Parwaresch would not file a notice of appeal only because he was not retained to do so, Willems

21

could have pursued the appeal *pro se* or sought to hire a lawyer for the purposed of appeal.  There was no testimony, argument, or evidence presented that Willems did either between the meeting with Mr. Parwaresch after sentencing in June 2017 and when he filed his *pro se* notice of appeal in June 2018. Moreover, Willems admitted, and the evidence establishes, that Willems and Mr. Parwaresch continued to meet and discuss his cooperation with the Government, and Willems did not discuss taking an appeal with Mr. Parwaresch during any of their conversations that occurred after the initial discussions of appeal in June 2017. Willems is a highly educated person and the Undersigned finds that if Willems truly wanted to take an appeal he would have filed his own appeal or retained counsel to appeal in a timely manner had Mr. Parwaresch advised that he would not file a notice of appeal on Willems' behalf. The Undersigned flatly rejects Willems' false and misleading testimony.

It is clear to the Undersigned that Willems' testimony that he wanted to appeal and that he instructed his privately-retained attorney Mr. Parwaresch to appeal immediately after sentencing is simply false and contradicted by the record, the evidence, and the testimony of Mr. Parwaresch. It is equally clear to the Undersigned that Willems deliberately chose to attempt to cooperate with the Government in an effort to reduce his sentence rather than appeal, and once he learned that he would not receive a Government recommendation for a sentence reduction, he changed course and made the false assertions in his Motion that he wanted to appeal since his sentencing and instructed Mr. Parwaresch to do so. Willems' testimony is simply not credible or believable.

In contrast, the Undersigned finds that Mr. Parwaresch was a credible witness during the evidentiary hearing and his testimony was also consistent with the evidence admitted during the hearing.  The Undersigned finds that Mr. Parwaresch fully discussed with Willems his appellate rights, and Willems chose not to appeal because he wanted to pursue cooperating with the

Government in the hopes that it would lead to a reduction in his sentence.[7] The Undersigned finds that Mr. Parwaresch would have filed a notice of appeal for Willems if directed to do so regardless of whether Willems opted to retain him to handle the appeal.

On this record, the Undersigned finds that Willems has not established that he reasonably demonstrated an interest in appealing or that a rational defendant would want to appeal. This is particularly true because Willems received the sentence he negotiated for in exchange for avoiding a separate set of charges.  Not appealing allowed for the possibility of receiving a reduced sentence in connection with his cooperation with the Government, which he pursued with Mr. Parwaresch. The Undersigned further finds that Mr. Parwaresch consulted with Willems regarding his right to appeal his sentence and that Willems never instructed Mr. Parwaresch to file a notice of appeal. Because Willems cannot demonstrate deficiency under *Strickland*, this claim should be **DENIED**.

    ii.    <u>*Failure To Review Discovery And Investigate (Grounds Two, Four)*</u>

Willems asserts that his pretrial counsel, Mr. Padilla, was ineffective because he failed to

---

[7] Mr. Parwaresch unfortunately did not memorialize in writing his discussions with Willems regarding appeal or Willems' decision not to take an appeal, which is a simple measure for a defense attorney to take to avoid later disputes on this point. *See, e.g.*, *Clark v. United States*, 18-80062-CR, 2021 WL 5353251, at *10 (S.D. Fla. Oct. 8, 2021), *report and recommendation adopted*, 18-80062-CR, 2021 WL 5353116 (S.D. Fla. Nov. 17, 2021) ("Mr. Zacca represented Clark professionally and ethically in the underlying criminal case and he fully documented his file, as he should, reflecting Clark's decision to not file a notice of appeal."). The Undersigned notes here, as it has done in other cases, that "all defense counsel should, when advised by a client in a federal criminal case that the client does not wish to appeal, endeavor to obtain a signed written directive from the client to that effect or, if unable to do so, to document the attorney's file with notes reflecting the client's decision and follow up with a confirmatory letter or other correspondence to the client." *Cilla v. United States,* 12-CR-60262-KAM, 2016 WL 824591, at *6, n.4 (S.D. Fla. Feb. 2, 2016), *report and recommendation adopted*, 15-60498-CIV, 2016 WL 836636 (S.D. Fla. Mar. 2, 2016); *see also Davis v. United States*, 18-80195-CR, 2021 WL 2288570, at *9 n.3 (S.D. Fla. May 4, 2021), *report and recommendation adopted*, 20-80914-CIV-JIC, 2021 WL 2288571 (S.D. Fla. June 4, 2021). However, in light of the evidence and testimony presented and the credibility findings made by the Undersigned after the evidentiary hearing in Willems' case, the lack of such memorialization by Mr. Parwaresch is not fatal to the Government's position on Willems' claim of ineffective assistance of counsel on this point.

review discovery with him (Ground Two) and failed to interview two witnesses (Ground Four). Willems asserts that Mr. Padilla failed to investigate the case and failed to find exculpatory evidence despite Willems' direction to witnesses and evidence on three occasions. [DE 11 at 4]. He also asserts that, on three occasions, Willems asked to go over the discovery material with Mr. Padilla and Mr. Padilla said to Willems "I'll do it later" or Mr. Padilla ignored his requests. *Id.* Both of Willems' claims regarding reviewing discovery and investigating the claims involves Willems' theory that the owner of Reflections forged his signature and that he had two witnesses that would testify that he never signed the medical necessity forms, he never prescribed controlled substances, and that a rubber stamp of Willems' signature existed. *Id.* at 4-5. Willems states that he wanted to go to trial and prove his innocence with these witnesses and rubber stamp evidence, but that Mr. Padilla said this evidence would confuse the jury. *Id.* at 5. The Undersigned finds that Willems has not demonstrated that he is entitled to relief under *Strickland*.

Because a guilty plea waives certain constitutional rights, before it is accepted, a district court must ensure that the waiver is a voluntary, knowing, and an intelligent act, done with sufficient awareness of the relevant circumstances and likely consequences surrounding the plea. *Hill v. Lockhart*, 474 U.S. 52, 56 (1985); *United States v. Ruiz*, 536 U.S. 622, 629 (2002). In other words, (1) a plea must be free from coercion; (2) the defendant must understand the nature of the charges; and (3) the defendant must know and understand the consequences of his guilty plea. *United States v. Moriarty*, 429 F.3d 1012, 1019 (11th Cir. 2005).

After the plea has been entered, a criminal defendant may not raise claims relating to the alleged deprivation of constitutional rights occurring prior to the entry of the guilty plea, but may only: (1) raise jurisdictional issues, *United States v. Patti*, 337 F.3d 1317, 1320 (11th Cir. 2003); (2) attack the voluntary and knowing character of the guilty plea, *Tollett v. Henderson*, 411 U.S.

258, 267 (1973); *Wilson v. United States*, 962 F.2d 996, 997 (11th Cir. 1992); or, (3) challenge the constitutional effectiveness of the assistance he received from his attorney in deciding to plead guilty, *United States v. Fairchild*, 803 F.2d 1121, 1123 (11th Cir. 1986). Thus, a voluntary and intelligent plea of guilty, made by an accused person, must stand unless induced by misrepresentations made to the accused person by the court, prosecutor, or his own counsel. *Brady v. United States*, 397 U.S. 742, 748 (1970). If a guilty plea is induced through threats, misrepresentations, or improper promises, the defendant cannot be said to have been fully apprised of the consequences of the guilty plea and may then challenge the guilty plea under the Due Process Clause. *See Santobello v. New York*, 404 U.S. 257 (1971).

First, Willems has failed to allege facts demonstrating the first prong of *Strickland*, that counsel "fell below an objective standard of reasonableness" for competent counsel in misadvising Willems regarding the plea.  Here, contrary to the Willems' representations, a review of the record confirms that his plea was knowing and voluntary, and not the result of misadvice or coercion from counsel or any other party. His representations now are directly refuted by his representations at the change of plea proceedings. Specifically, at his change of plea hearing, Willems agreed with the factual proffer, he acknowledged the rights he was waiving by entering into the plea, and further denied being forced, or otherwise coerced by counsel or anyone, into changing his plea. During the course of the colloquy, Willems was given multiple opportunities to speak directly to the Court, and Willems never voiced any complaints about his lawyer's performance, indicated that he was innocent, indicated that there was exculpatory evidence, or mentioned that he wanted to go to trial. In fact, by way of entering into the negotiated plea agreement, Willems was telling his lawyer not to conduct any further investigation and not present at a pretrial or trial proceeding any legal defenses that he may be entitled to as it related to his case.  In addition, contrary to

Willems' position, the affidavit of Mr. Padilla is evidence that he both investigated Willems' defenses, by interviewing witnesses requested, and reviewed the discovery with Willems. This is fully corroborated by the signed factual proffer [CR-DE 149], the change of plea transcript [DE 8-1 at 14], and the PSI [PSI ¶ 167].

Further, the second prong of *Strickland* requires Willems to demonstrate that, but for counsel's errors or misadvice he would not have plead guilty and would have insisted on going to trial. *Hill*, 474 U.S. at 56-59; *United States v. Brown*, 752 F.3d 1344, 1347 (11th Cir. 2014).  In exchange for his concessions, the Government agreed to jointly recommend a 10-year sentence in exchange for avoiding a separate set of charges. Willems also cooperated with the Government and continued to cooperate with the Government after sentencing in the hopes of receiving a reduced sentence.  Given the charges he was facing and in light of the Government's willingness to drop certain charges, it is not surprising that Willems chose to plead guilty rather than proceed to trial. Moreover, even assuming arguendo some lesser degree of investigation and review of discovery by Mr. Padilla, the substitution of Mr. Parwaresch fully cured any harm to Willems. After Mr. Parwaresch reviewed the discovery and counseled Willems independently, Willems elected to continue with the agreement with the Government negotiated by Mr. Padilla and proceed to sentencing.

Willems cannot prevail on this claim as none of the arguments merit relief, having been clearly refuted by the change of plea proceedings and the record. The record clearly establishes that Willems' attorney, Mr. Padilla, competently and zealously represented him in this case. Because Willems cannot demonstrate deficiency and prejudice under *Strickland*, this claim should be **DENIED**.

26

### iii. *Conflict of Interest (Ground Seven)*

Willems asserts that his pretrial counsel, Mr. Padilla, was ineffective because he had a conflict of interest between Willems' legal interest and Mr. Padilla's own financial interest. [DE 11 at 6]. Willems states that the owner of the clinic at issue in this case, Richard Fernando Betero, paid for Mr. Padilla to represent Willems. *Id.* Willems argues that Mr. Padilla wanted to make sure Mr. Betero stayed out of prison so that he would continue to be paid for representing Willems. Because of this alleged conflict, Willems states that Mr. Padilla did not investigate his case. *Id.* The Undersigned finds that Willems has not demonstrated that he is entitled to relief under *Strickland*.

To show ineffectiveness, Willems "must demonstrate: (a) that his defense attorney had an actual conflict of interest, and (b) that this conflict adversely affected the attorney's performance." *Reynolds v. Chapman*, 253 F.3d 1337, 1342 (11th Cir. 2001) (citation omitted). To satisfy the "actual conflict" prong, Willems must point to specific instances in the record to suggest an actual conflict or impairment of his interests and show something more than "a possible, speculative, or merely hypothetical conflict." *Lightbourne v. Dugger*, 829 F.2d 1012, 1023 (11th Cir.1987); *see Reynolds*, 253 F.3d at 1342–43. If Willems can demonstrate that his attorney labored under an actual conflict of interest, he must then show that this conflict adversely affected the representation he received. *Id.* To prove adverse effect, Willems needs to demonstrate: "(a) that the defense attorney could have pursued a plausible alternative strategy, (b) that this alternative strategy was reasonable, and (c) that the alternative strategy was not followed because it conflicted with the attorney's external loyalties." *Reynolds*, 253 F.3d at 1343.

First, Willems has not made a factual showing of an actual conflict. Instead, he merely speculates that Mr. Padilla had an actual conflict in representing Willems because Mr. Betero was

paying for his representation.  This is insufficient to show an actual conflict.  *See Perez v. United States*, 11-20856-CIV, 2015 WL 5012827, at *10-11 (S.D. Fla. Aug. 6, 2015), *report and recommendation adopted,* 11-20856-CIV, 2015 WL 5020682 (S.D. Fla. Aug. 24, 2015) (where legal fee transmitted to attorney by potentially conflicted third party, even assuming third party was the actual source of the funds, no evidence of an actual conflict that adversely affected lawyer's performance). Moreover, Mr. Padilla never represented Mr. Betero and Mr. Betero was represented by separate CJA counsel. *United States v. Botero*, Case No. 17-80070-CR-MIDDLEBROOKS, Minute Entry (Apr. 14, 2017).

Second, even assuming arguendo there was a conflict, Willems has not shown that this conflict adversely affected his attorney's performance. Willems' position is that Mr. Padilla's conflict prevented him from investigating his case.  The Court has fully addressed this point separately *supra*. In short, Willems negotiated a plea with the assistance of Mr. Padilla and then reaffirmed that decision with the assistance of Mr. Parwaresch.  Thereafter, Willems knowingly and voluntarily plead guilty to Count One in exchange for avoiding a separate set of charges. Pleading guilty necessarily tells his attorney to discontinue investigating the facts of the case.  In other words, Willems got what he bargained for.

Because Willems cannot demonstrate deficiency and prejudice under *Strickland*, this claim should be **DENIED**.

    *iv.*   <u>*Sentencing Claims (Grounds Five, Six, Eight) and Actual Innocence (Ground Ten)*</u>

Willems claims that his guidelines were improperly calculated, and that he should have been subject to a sixteen-level loss enhancement, as opposed to the eighteen-level enhancement that the Court applied (Ground Five). [DE 1 at 7]. Willems asserts that his counsel was ineffective for failing to object to this error. Willems also argues that his counsel was ineffective because he

failed to correct factual errors in the PSI (Grounds Six and Eight). *Id.* Willems argues that the restitution amount totaled $3,041,476.32 [CR-DE 280], but the enhancement in his PSI accounted for losses greater than $3,500,000.00. *Id.* The Undersigned finds that Willems has not demonstrated that he is entitled to relief under *Strickland*.

Willems would need to show that counsel's performance was deficient and that the alleged sentencing error not only prejudiced him but also constituted "a fundamental defect which inherently results in a complete miscarriage of justice." *Spencer v. United States*, 773 F.3d 1132, 1138 (11th Cir. 2014) (en banc) (A movant "cannot collaterally attack his sentence based on a misapplication of the guidelines."). Collateral review is limited to a "fundamental defect which inherently results in a complete miscarriage of justice." *United States v. Addonizio*, 442 U.S. 178, 185 (1979) (quotation omitted). "A prisoner may challenge a sentencing error as a 'fundamental defect' on collateral review when he can prove that he is either actually innocent of his crime or that a prior conviction used to enhance his sentence has been vacated ...." *Spencer*, 773 F.3d at 1139. A misapplication of the advisory sentencing guidelines, in contrast, does not meet this demanding standard. *Id.*

Willems asserts that he is actually innocent (Ground Ten), but such a claim is insupportable. Courts have "equitable authority to invoke the miscarriage of justice exception to overcome expiration of the statute of limitations governing a first federal habeas petition." *McQuiggin v. Perkins*, 569 U.S. 383, 397 (2013). However, "[t]he miscarriage of justice exception...applies to a severely confined category: cases in which new evidence shows 'it is more likely than not that no reasonable juror would have convicted [the movant].'" *Id.* at 394-95 (quoting *Schlup v. Delo*, 513 U.S. 298, 303 (1995)). This type of claim is commonly referred to as

an "actual innocence" claim. *McQuiggin*, 569 U.S. at 392 (citation omitted); *see also Bousley v. United States*, 523 U.S. 614, 623 (1998).

"'[A]ctual innocence' means factual innocence, not mere legal insufficiency." *Johnson v. Fla. Dep't Of Corr.*, 513 F.3d 1328, 1334 (11th Cir. 2008) (quoting *Bousley*, 523 U.S. at 623). "Actual innocence claims must also be supported 'with new reliable evidence--whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence--that was not presented at trial.'" *Rich v. Dep't of Corr. State of Fla.*, 317 F. App'x 881, 882 (11th Cir. 2008) (per curiam) (quoting *Schlup*, 513 U.S. at 324).

Willems has not met his burden here and his claim is contradicted by the record. On the record before the Undersigned, there was sufficient evidence that would have been introduced at trial to support convicting Willems of the crimes charged and there is no prejudice where Willems acknowledged his participation and plead guilty. He also fails to raise any new reliable evidence that he did not know of at the time of his guilty plea.  As to his sentence, Willems requested the sentence imposed, and because the perceived factual errors in the PSI were not the actual basis of the requested variance, he has not alleged a fundamental defect resulting in a complete miscarriage of justice. In addition, according to Willems, at least as of the day of sentencing, he knew there were errors in his PSI, which was the basis for his argument as to why he wanted to appeal.  There is no prejudice where Willems agreed in the factual proffer to a loss amount exceeding $6.5 million [CR-DE 149 ¶ 26], which need not equal the final amount of restitution sought on behalf of the victims. The applied enhancement covered a range of loss from $3.5 million to $9.5 million. [PSI ¶ 170]. There has not been a complete miscarriage of justice in Willems' sentence, and this claim should be **DENIED**.

### C.  Abuse of Discretion

Finally, Willems argues that he is entitled to have his conviction vacated because the District Court abused its discretion in (1) denying his motion to continue his sentencing hearing (Ground 9) and (2) sentencing him to the statutory maximum of 120 months (Ground Three). [DE 11 at 8-9]. The Undersigned finds that Willems is not entitled to habeas relief here.

28 U.S.C. § 2255 only permits relief where the sentence was imposed in violation of constitutional or statutory law, was in excess of the maximum authorized by law, or is otherwise subject to collateral attack. 28 U.S.C. § 2255(a). There is no constitutional error in the District Court having denied the motion to continue the sentencing or having sentenced Willems above the guidelines range. The guidelines are merely advisory, and the District Court had the discretion under 18 U.S.C. § 3553(a) to sentence Willems above the advisory guidelines, so long as that sentence did not exceed the statutory maximum penalty. *See United States v. Booker*, 542 U.S. 220, 245 (2005) (after "rendering the Guidelines effectively advisory," federal law "requires a sentencing court to consider Guidelines ranges, but it permits the court to tailor the sentence in light of other statutory concerns as well") (internal citations omitted). Here, the District Court recognized this discretion and, having articulated its reasons for so doing, sentenced Willems to 120 months in prison, the statutory maximum, at his request. Because the sentence did not exceed the statutory maximum penalty, there is no grounds for relief under 28 U.S.C. § 2255, and this claim should be **DENIED**.

### IV.    CONCLUSION AND RECOMMENDATION

Based on the foregoing, the Undersigned finds that Willems' Motion is untimely and otherwise without merit as discussed in detail above. Accordingly, **IT IS RECOMMENDED** that the Movant Donald Willems Motion to Vacate pursuant to 28 U.S.C. § 2255 [DE 1] be **DENIED**.

Further, the Undersigned finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000). Therefore, it is recommended that the Court **DENY** a certificate of appealability in its Final Order.

**V.**    **NOTICE OF RIGHT TO OBJECT**

The parties shall have fourteen (14) days from the date of being served with a copy of this Report and Recommendation within which to file written objections, if any, with U.S. District Judge Donald M. Middlebrooks.  Failure to file objections timely shall bar the parties from a de novo determination by the District Judge of an issue covered in the Report and Recommendation and shall bar the parties from attacking on appeal unobjected-to factual and legal conclusions contained in this Report and Recommendation.  *See* 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140, 149 (1985); *Henley v. Johnson*, 885 F.2d 790, 794 (11th Cir. 1989); 11th Cir. R. 3-1 (2016).

**RESPECTFULLY SUBMITTED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 22nd day of December, 2021.

WILLIAM MATTHEWMAN
United States Magistrate Judge